UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<table>
<tr><td>

JOE NELL JOHNSON, II,

                                 Plaintiff,

-against-

RIVERHEAD CENTRAL SCHOOL DISTRICT, et al.,

                                 Defendants.

</td><td>

**MEMORANDUM OF
DECISION AND ORDER**
14-CV-7130 (LDH) (AKT)

</td></tr>
</table>

LaSHANN DeARCY HALL, United States District Judge:

Plaintiff Joe Nell Johnson, II, brings the instant action against Defendants Riverhead Central School District (the "District"), the Riverhead Central School District Board of Education (the "Board"), Ann Cotton-Degrasse, Gregory Meyer, Thomas Carson, Christopher Dorr, Amelia Lanz, Kimberly Ligon, Susan Koukounas, Lori Hulse, Nancy Carney, Joseph Ogeka, David Wicks, Sam Schneider, and Debra Rogers[1] (collectively "Defendants") asserting the following:  discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"); discrimination in violation of 42 U.S.C. § 1981; violations of due process and equal protection under 42 U.S.C. § 1983; violation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); *Monell* liability; and several state law claims.[2]  Defendants move, pursuant to Federal Rule of Civil Procedure 56, to dismiss the action in its entirety.

**UNDISPUTED FACTS[3]**

---

[1] Plaintiff brings claims against these defendants individually and in their respective official capacities as Trustee of the Board, Trustee of the District, Superintendent of Schools, Assistant Superintendent for Personnel, Assistant Superintendent of Schools for Curriculum, Assistant Superintendent for Business, and Principal of Phillips Avenue Elementary School.
[2] Plaintiff also brought claims against Christopher Venator, outside counsel for the District.  On October 21, 2015, the Court granted Defendant Venator's motion to dismiss all claims against him.  (Order (Oct. 21, 2015), ECF No. 74.)
[3] The following facts are undisputed unless otherwise noted.

Plaintiff is an African-American who was a tenured teacher employed by the District since at least 2000. (Defendants' 56.1 Statement ("Defs.' 56.1") ¶ 1, ECF No. 109-2; Defs.' Ltr. Mot. for Pre-Mot. Conf., Ex. D, at 10, ECF No. 105-5; Defs.' Answer ¶ 8.) Before 2012, Plaintiff "had a stellar work record." (Defs. Ltr. Mot. for Pre-Mot. Conf., Ex. D at 16.) In 2012 and 2013, however, Plaintiff was charged by the District, pursuant to N.Y. Education Law § 3012 and § 3020-a, in relation to two separate incidents. *First*, on June 12, 2012, Plaintiff was charged with knowingly presenting an affidavit containing false information with the knowledge or belief that the application would be filed with the District. (Defs.' 56.1 ¶ 1.) Specifically, Plaintiff submitted an affidavit to the District stating that a criminal history check would reveal no criminal history, when, in fact, Plaintiff had prior criminal convictions. (*Id.*) In September 2012, the District and Plaintiff entered into a settlement agreement with regard to this charge. (*Id.* ¶ 2.) Plaintiff agreed to be suspended without pay for a portion of the first semester of the 2012-2013 school year. (Defs.' Ltr. Mot. for Pre-Mot. Conf., Ex. B, ¶ 2, ECF No. 105-3.) *Second*, on December 10, 2013, Plaintiff was charged by the District with operating a motor vehicle while intoxicated and in possession of a loaded firearm without a license to possess such firearm. (Defs.' 56.1 ¶ 3.) The District also charged that this conduct was incompatible with the standards requiring teachers to be seen as positive role models for students. (*Id.*) Hearings were held with respect to the December 10, 2013 charges on March 7, March 17, March 24, April 9, April 30, and June 26, 2014. (*Id.* ¶ 4.)

During the pendency of the December 2013 charges, on January 17, 2014, Plaintiff was administratively reassigned to work at the District Office and assigned a desk in a temporary mobile office known as "Portable 11." (*Id.* ¶ 8.) According to Plaintiff, the conditions in Portable 11 were intolerable in that Portable 11 was inadequately heated, air conditioned, and

ventilated. (Defendants' Reply 56.1 Statement ("Defs.' Reply 56.1") ¶ 145, ECF No. 113.)

Plaintiff also contends that Portable 11 lacked bathroom facilities and that the District failed to

provide Plaintiff a key with which to lock Portable 11. (*Id.*) Defendants dispute Plaintiff's

characterization of Portable 11. (*Id.*)

In an August 15, 2014 decision, the hearing officer found Plaintiff guilty of both charges

and recommended that Plaintiff be terminated. (Defs.' 56.1 ¶ 5.) On August 26, 2014, the Board

terminated Plaintiff by adopting a resolution implementing the August 15, 2014 decision of the

hearing officer. (*Id.* ¶ 11.)

On August 15, 2014, Plaintiff initiated a proceeding pursuant to N.Y. C.P.L.R. Article 75

challenging the hearing officer's decision as arbitrary, capricious, and irrational. (*Id.* ¶ 6.) On

May 5, 2015, Judge Joseph C. Pastoressa of the New York Supreme Court denied Plaintiff's

application and dismissed the petition. (*Id.*)

On January 21, 2014, Plaintiff filed a complaint against the District with the U.S.

Department of Education. (*Id.* ¶ 19.) On January 23, 2014, Plaintiff filed a complaint against the

District with the New York State Division of Human Rights. (*Id.* at ¶ 20) Plaintiff contends, and

Defendants dispute, that Plaintiff filed a complaint with the U.S. Equal Employment Opportunity

Commission (the "EEOC") on December 20, 2013. (Defs.' Reply 56.1 ¶ 143.) After his

termination, Plaintiff received a notice dated October 31, 2014 regarding his right to continue

health insurance under COBRA. (Defs.' 56.1 ¶¶ 34-35.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material

fact and the movant[s are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material

fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At summary judgment, the movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325.

Once the movants meet that burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The court is to view all facts in the light most favorable to the non-movant, drawing all reasonable inferences in his favor. *Anderson*, 477 U.S. at 255. To survive summary judgment, the non-movant must present concrete evidence and rely on more than conclusory or speculative claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) ("The litigant opposing summary judgment . . . 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial.") (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978).

## DISCUSSION

## I.  Plaintiff's Title VII and § 1981 Discrimination Claims

Title VII claims and claims for race and national origin discrimination under § 1981 are analyzed under the three-step burden-shifting test established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). To establish a prima facie case of discrimination, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse

employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Id.* at 491-92. After a plaintiff establishes a prima facie case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 492. Once the defendants articulate a nondiscriminatory explanation for their action, the plaintiff has the burden to show that the legitimate reasons offered by the defendants were a pretext for discrimination. *Id.* To create a material issue of fact and defeat a motion for summary judgment, however, a plaintiff is required to produce "not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendants] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)).

There is no dispute that Plaintiff, as an African-American, is a member of a protected class and that he has suffered an adverse employment action. The parties dispute, however, whether Plaintiff was qualified to continue serving as a teacher and whether the adverse employment action occurred under circumstances giving rise to an inference of discrimination. (*See* Defs.' Mem. at 2-6; Pl.'s Opp. Mem. at 13-19.) As to Plaintiff's qualifications to continue serving as a teacher, Defendants argue that Plaintiff's "ability to be viewed and function effectively as a positive role model was thoroughly compromised by his operating a motor vehicle while intoxicated and in possession of a loaded firearm." (Defs.' Mem. at 2.) Plaintiff, on the other hand, argues that he was qualified for his position because, as the hearing officer found that "up to the time of his arrest, [Plaintiff] had a stellar work record." (Defs.' Ltr. Mot. for Pre-Mot., ECF No. 105, Ex. D, at 16.) This dispute raises an issue of fact not properly

resolved on a motion for summary judgment. This does not save Plaintiff's claims, however, because Plaintiff has failed to satisfy the fourth element of a Title VII and § 1981 race discrimination claim: that any adverse employment action took place under circumstances giving rise to an inference of discrimination.

According to Plaintiff, the District had a policy whereby it would only discipline teachers and administrators who have either been found guilty or entered a plea of guilty to criminal conduct. (Defs.' Reply 56.1 ¶ 162.) Plaintiff claims that the District treated him contrary to this policy because although he only pleaded guilty to a violation (driving while intoxicated), Defendants brought a 3020-a disciplinary charge against him for the possession of a weapon without a license, even though the weapon charge was ultimately dismissed. (*Id.* ¶ 164.) Plaintiff maintains that this purported disparate treatment was attributable to his membership in a protected class. (Pl.'s Mem. at 13-14.)

Plaintiff does not argue that he was subjected to conduct that would provide direct evidence necessary to infer discrimination. Instead, Plaintiff attempts to support his claim by comparing his treatment to those of allegedly similarly-situated employees outside of his protected group. While a plaintiff can demonstrate disparate treatment with proof that an employer treated him less favorably than similarly-situated employees outside of his protected group, to succeed on such a claim, the proffered comparator must indeed be similarly situated. *See Ruiz*, 609 F.3d at 493-94. An employee under these circumstances would be similarly situated to other employees if he were "(1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Id.* (quoting *Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir. 2000)). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's

cases, rather than a showing that both cases are identical." *Id.* at 494. That is, the comparators need not be identical, but they must bear a close resemblance to the plaintiff. Defendants argue that Plaintiff's proffered comparators are not sufficiently similar to give rise to an inference of discrimination. The Court agrees. Far from bolstering Plaintiff's claims, upon examination, these comparators fatally undermine them.

*First*, two of the purported comparators, who were not disciplined by the District, Eric Shaw and Valerie Brown, are African-American. (*See* Pl.'s 56.1 Counter Statement, Ex. 52, ECF No. 110-52.) Their membership in the same protected class as Plaintiff undermines any claim that the District's conduct was motivated by racial discrimination. *See Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11 Civ. 3625, 2013 WL 3968748, at *10 (E.D.N.Y. July 30, 2013) (finding that "[p]laintiff's argument that his termination was a result of racial or national origin animus [was] discredited because his alleged comparators . . . are of the same race and national origin as [p]laintiff and neither was terminated.").

*Second*, contrary to Plaintiff's claims, many of the comparators identified by Plaintiff were, in fact, disciplined for conduct that was not criminal. Ms. Volonts, a music teacher, did not permit certain students to participate in an ice cream social because those students had failed to attend a concert and had presented wine to volunteers who had assisted her with the concert. (Defs.' Mem., Ex. A, 22:13-23, ECF No. 116-1.) The District disciplined Volonts by sending her to counseling and Volonts ultimately retired before the start of the next school year. (*Id.*) Mr. Walter, a teacher, had a sexual relationship with a student whom he later married. (*Id.* at 28:9-16.) Contrary to Plaintiff's claims, there is no evidence in the record establishing that the student was underage and the conduct, while reprehensible, was not criminal. Indeed, the only evidence in the record on this point, the deposition testimony of Cotton-DeGrasse, indicates that

Cotton-DeGrasse believed that the student had reached the age of consent.  (*Id.* at 144:11-14.)  Further, like Plaintiff, Walter was brought up on 3020-a charges, which resulted in a significant fine.  (*Id.* at 28:6-21.)  Mr. Densieski, a principal, was accused of praying with a teacher and permitting her to leave work early for child care reasons.  (*Id.* at 33:8-34:3.)  While this conduct was clearly not criminal, Densieski was brought up on 3020-a charges.[4]  (*Id.*)

*Third*, the remaining purported comparators' conduct is readily distinguishable from Plaintiff's.  Seven of the alleged comparators (Zimbler, McGready, Green, Gassar, Walsh, Ramos, and Ogeka) were involved in conduct that only related to the consumption of alcohol or driving under the influence.  None of these individuals was found to have been driving under the influence of alcohol or drugs *while in the possession of a loaded firearm for which he or she did not have a license.  See Ruiz*, 609 F.3d at 495 (noting that while the County "failed to sustain its burden of proof on the sexual abuse and rape charges" and the plaintiff may be innocent of the charges, "the fact that [plaintiff] had been accused by multiple patients and co-workers of inappropriate and unlawful behavior clearly distinguishes [him] from other employees who were not the subject of such accusations").  To find Plaintiff similarly situated to these individuals would require the Court to ignore the undisputed fact that he was found in possession of a loaded

---

[4] Plaintiff's 56.1 Statement makes a number of salacious and unsupported allegations regarding certain of the purported comparators.  For example, Plaintiff claims that Densieski was "caught in a compromising sexual relationship with a teacher on school property" but offers absolutely no evidence to support this contention.  (Pl.'s 56.1 Statement ¶ 134.)  Similarly, with respect to Defendant Ogeka, Plaintiff claims that Ogeka engaged in a "sexual relationship with [a] staff member while on District grounds" and forwarded "from his ponepictures [sic] of himself to District personnel with women's underwear on his head."  (*Id.*)  Plaintiff makes the similarly salacious and unsupported allegation that another potential comparator, a "white female[, had] a sexual relationship with a student who was a minor."  (*Id.*)  Not only do these unsupported allegations fail to create a material issue of fact, but for Plaintiff to make such incendiary and damaging allegations in publicly-filed documents, without any evidentiary basis, at this stage of the litigation, is improper.  Indeed, these unsupported factual contentions likely violate Federal Rule of Civil Procedure 11, which provides that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).

gun without a license.[5]  This the Court refuses to do.

Because Plaintiff has failed to proffer comparators to demonstrate the requisite inference of racial discrimination, Plaintiff's § 1981 and Title VII claims must be dismissed.[6]  *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (affirming summary judgment because plaintiff failed to identify similarly-situated individuals who were treated differently than she was).

## II. Title VII Retaliation Claim

Plaintiff alleges that the District retaliated against him by reassigning him to Portable 11 shortly after he filed a complaint with the New York State Division of Human Rights and the EEOC.  Defendants argue that Plaintiff's retaliation claim must be dismissed because Plaintiff fails to allege the necessary causal connection between Plaintiff's reassignment and any protected activity.  Once again, the Court agrees.

"To establish a *prima facie* case of retaliation under Title VII, a plaintiff must generally show that:  (1) he engaged in a protected activity by opposing a practice made unlawful by Title VII; (2) his employer was aware of that activity; (3) he suffered a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action."  *Giscombe v. New York City Dep't of Educ.*, 39 F. Supp. 3d 396,

---

[5] Even if Plaintiff could have established the requisite similarity with these comparators, the Court would find as a matter of law that Defendants had established a legitimate non-pretextual basis for Plaintiff's termination.  The District had every reason to treat Plaintiff as it did:  he was found to be in possession of a firearm for which he did not have a license.  The Decision specifically highlighted how "the charge of gun possession changed everything," explaining that "[w]orkplace violence concerns are seemingly pervasive nowadays" and that "a classroom's environment and surroundings[ ] must be carefully guarded."  (*See* Defs. Ltr. Mot. for Pre-Mot. Conf., Ex. D at 19-20.)  The Court could not agree more.

[6] Plaintiff's 56.1 Statement also identifies "McKillip" as a "white male teacher" but fails to provide even cursory allegations as to the conduct in which McKillip engaged or any action the District took against McKillip in relation to this conduct.

401 (S.D.N.Y. 2014) (quoting *Cretella v. Liriano,* 633 F.Supp.2d 54, 74 (S.D.N.Y. 2009), *aff'd,* 370 Fed. App'x. 157 (2d Cir. 2010)).

Here, Plaintiff's filing of an EEOC complaint constitutes protected activity. *See Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (finding that it is clear that the filing of federal or state administrative charges constitutes protected activities). The Court is not altogether convinced, however, that Plaintiff's reassignment to Portable 11 constitutes an adverse employment action.[7] Assuming that the reassignment constituted an adverse employment action, Plaintiff has failed to demonstrate the required causal connection. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (quoting *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Here, however, Plaintiff has failed to provide any evidence that Defendants were aware that Plaintiff had engaged in protected activity before reassigning Plaintiff to Portable 11.

Plaintiff was reassigned to Portable 11 on January 17, 2014. Plaintiff claims that he filed a complaint with the EEOC on December 24, 2013. Instead of providing the filed EEOC complaint itself, Plaintiff has provided only a USPS card indicating that an unidentified item was

---

[7] For purposes of a retaliation claim, an adverse employment action "is one that 'a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Giscombe*, 39 F. Supp. 3d at 401 (quoting *Senno v. Elmsford Union Free School Dist.,* 812 F.Supp.2d 454, 472 (S.D.N.Y. July 28, 2011)). Plaintiff claims that conditions in Portable 11 were intolerable because there was "no bathroom, improper ventilation, heat and air conditioning." (Pl.'s Mem. at 18.) Defendants have put forth evidence, however, that Plaintiff was provided access to bathroom facilities and that Portable 11 had been used as a class for students as well as the offices for administrative staff, including a District principal and assistant principal. (Defs.' Mem. at 21.) While somewhat of a close call, the Court need not resolve this issue because, as explained below, Plaintiff has failed to demonstrate that Defendants were aware Plaintiff engaged in protected activity before assigning him to Portable 11.

delivered to Kevin J. Berry, at the EEOC's offices at 33 Whitehall Street, 5th Floor, New York, NY 10004 on December 20, 2013. (*See* Pl.'s 56.1 Counter Statement, Ex. 68, ECF No. 110-68.) Even assuming that Plaintiff filed the EEOC complaint on December 24, 2013, Plaintiff has provided no evidence whatsoever that Defendants were aware of Plaintiff's complaints before reassigning him on January 17, 2014.

Defendants, on the other hand, have produced evidence that Defendants were not aware of Plaintiff's complaint until after Plaintiff was reassigned. In particular, a February 21, 2014 letter from the U.S. Department of Education indicates that it did not receive a complaint from Plaintiff until January 21, 2014. (Defs.' Ltr. Mot. for Pre-Mot., Ex. I, ECF No. 105-10.) Further, Defendants have produced a sworn affidavit from Sam Schneider, District Deputy Superintendent, in which he attests that following exhaustive searches of the District's files neither he nor the District Clerk have identified any documents indicating that that the District received a complaint from Plaintiff prior to January 17, 2014. (Defs.' Reply Rule 56.1, Ex. J at ¶ 11, ECF No. 113-10.) Plaintiff has provided no evidence to contest this proof.

Based on the record before the Court, Plaintiff was reassigned to Portable 11 before the District was informed of his complaints. Therefore, he cannot prove the required causal connection between his protected activity and the alleged retaliation and his claim must be dismissed. *See Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11 Civ. 5528 MKB, 2014 WL 4773975, at *23-24 (E.D.N.Y. Sept. 24, 2014) (granting summary judgment and dismissing a plaintiff's claim where "[p]laintiff cannot show a causal connection between this complaint and her termination, since there is no evidence that the decision-makers who investigated and ultimately terminated [p]laintiff had actual knowledge of her complaint").

**III. Section 1983 Claim**

"To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived [him] of a federal right." *Grennan v. Nassau Cty.*, 2007 WL 952067, at *7 (E.D.N.Y. Mar. 29, 2007). Plaintiff alleges that he was denied due process during the course of his two § 3020-a disciplinary proceedings. (Compl. ¶ 166.) He also alleges that he was denied equal protection of the laws during the course of the disciplinary proceedings. (Compl. ¶¶ 163-73.) Defendants maintain that Plaintiff's due process claim is ripe for dismissal because the District followed the procedures of New York Education Law in providing Plaintiff with a § 3020-a proceeding and therefore Plaintiff was provided with all the process he was due. Further, Defendants argue that Plaintiff's equal protection clause fails for the same reason his racial discrimination claims fail: Plaintiff has failed to identify similarly-situated comparators. Once again, the Court agrees.

A. Due Process

"Generally, procedural due process requires an opportunity for a meaningful hearing prior to the deprivation of a significant property interest." *Montefusco v. Nassau Cty.*, 39 F. Supp. 2d 231, 239 (E.D.N.Y. 1999) (*Catanzaro v. Weiden*, 140 F.3d 91, 94 (2d Cir.1998)). To determine whether a plaintiff was deprived of property without due process, the Court must: (1) "identify the property interest involved"; and (2) "determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005).

Here, Plaintiff was a tenured employee, and therefore under New York Education Law § 3012 he could only be removed from his position for cause. *See McCreery*, 827 F.Supp. at 138. In other words, Plaintiff had a property interest in his position as a tenured teacher. *Id.*

Plaintiff has failed, however, to raise triable issues of fact as to whether he received constitutionally adequate process.

Plaintiff was provided with two separate § 3020-a proceedings:  one for the June 12, 2012 charge and another for the December 10, 2013 charges.  "The procedures of § 3020-a, when followed, are more than adequate to satisfy the Fourteenth Amendment's requirement of due process."  *Blythe v. City of New York*, 963 F. Supp. 2d 158, 174 (E.D.N.Y. 2013); *see also Roemer v. Bd. of Ed. of City of New York*, 150 Fed. App'x 38, 40 (2d Cir.2005) ( "[Section 3020-a] sets out the procedures for challenging claims like the ones brought against [plaintiff] and provides all the process due.").  Plaintiff does not challenge the fact that these procedures were followed.  Nor could he do so successfully.  Plaintiff entered into a voluntary settlement with respect to the June 12, 2012 charge.  (*See* Defs.' Ltr. Mot. for Pre-Mot. Conf., Ex. B.)  With respect to the December 10, 2013 charges, the Board met in an executive session on December 10, 2013, and determined that there was probable cause for the charges against Plaintiff.  (*See* Defs. Ltr. Mot. for Pre-Mot. Conf., Ex. C, ECF No. 105-4.)  Plaintiff was served with the § 3020-a charges, accorded a hearing, received a decision from the hearing officer, and even appealed that decision pursuant to N.Y. C.P.L.R. Article 75.

Unable to cast doubt on the adequacy of the § 3020-a procedures, Plaintiff claims that the "pre-3020-a hearing procedures" were inadequate, in that before determining that probable cause existed, the Board did not do "its due process due diligence."  (Pl.'s Opp. Mem. at 21.)  Such a failing, even if it occurred, does not provide a basis for a due process claim.  Indeed, Plaintiff cites absolutely no authority that would allow the Court to recognize this sort of due diligence injury.  Instead, "procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is

provided afterwards." *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001). Plaintiff was provided with notice of the charges against him and an opportunity to be heard on those charges. The Constitution requires no more.

Plaintiff also alleges that during the course of his two § 3020-a proceedings he was "brought up on charges twice" arising from his arrest for operating a motor vehicle while intoxicated and that "he was not fully apprised of the definition of possession of a weapon." (Compl. ¶ 166.) The record, however, reflects just the opposite. The June 12, 2012 charges against Plaintiff were for providing false information in an affidavit to the District while the December 10, 2013 charges were for operating a motor vehicle while intoxicated and while in possession of a loaded firearm. (*Compare* Defs.' Ltr. Mot. for Pre-Mot., ECF No. 105, Ex. A *with* Ex. C.) Further, with respect to the December 10, 2013 charges, the hearing officer expressly stated that he relied on the definition of possession of a weapon "in the Statement of Charges," a copy of which was provided to Plaintiff in December 2013. (*See* Defs.' Ltr. Mot. for Pre-Mot., Ex. D, at 17; Ex. C.) Plaintiff's complaint also alleges that he was not permitted to question certain witnesses during his 3020-a hearing. (Compl. ¶ 169.) Plaintiff has not identified any evidence to support this allegation and did not address this allegation in his 56.1 Statement or briefing. In any event, the record before the Court reflects that Plaintiff had the opportunity to call witnesses, question the District's witnesses, and, in fact, engaged in extensive questioning of the District's witnesses. (*See* Defs.' Ltr. Mot. for Pre-Mot., Ex. D, at 13-16.) Because Plaintiff has failed to raise a genuine issue of material fact with respect to whether he was deprived of due process in connection with the § 3020-a proceedings, Defendants are entitled to summary judgment on this claim.

B. Equal Protection

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). To defeat Defendants' summary judgment motion, Plaintiff was required to produce evidence demonstrating "(1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rodriguez v. Clinton*, 357 F. App'x 355, 357 (2d Cir. 2009) (alterations in original).

Plaintiff alleges that Defendants did not treat him as well as similarly-situated people. As discussed at length with respect to Plaintiff's racial discrimination claims, however, Plaintiff has failed to identify similarly-situated individuals who were treated better than he was. Because Plaintiff has failed to identify such individuals, summary judgment is appropriate on this claim.

C. Monell Liability

Plaintiff asserts *Monell* liability against Defendant Venator. (Compl. ¶¶ 211-13.) Defendant Venator, however, was dismissed from this action. (Order, Oct. 21, 2015, ECF No. 74.) The Court will assume that Plaintiff intended to bring this claim against the District and the Board. "*Monell* does not provide a separate cause of action . . . it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Mazur v. New York City Dep't of Educ.*, 53 F. Supp. 3d 618, 640 (S.D.N.Y. 2014), *aff'd*, 621 F. App'x 88 (2d Cir. 2015) (quoting *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). "Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted

from a custom or policy of the municipality." *Id.* (quoting *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013)). Because Defendants are entitled to summary judgment on Plaintiff's § 1983 claims, they are also entitled to summary judgment with regard to Plaintiff's *Monell* claim. *See Mazur*, 53 F. Supp. 3d at 640 ("Because Plaintiff fails to establish that an underlying constitutional violation occurred, the [Defendant] cannot be held liable under *Monell*.").

## IV. COBRA Claim

"COBRA provide[s] an alternative to prohibitively expensive individual health care insurance policies for those people who, on account of certain events like a divorce or the loss of a job, [are] at risk of losing their employment-related group health insurance." *Phillips v. Saratoga Harness Racing, Inc.*, 240 F.3d 174, 179 (2d Cir. 2001). Specifically,

> COBRA requires that an employer must notify the plan administrator of the termination within 30 days of the termination and the plan administrator then has 14 days to provide the COBRA notice to the terminated employee. The terminated employee then has 60 days from the date of termination of employment or the date of notice, whichever is later, to elect to continue coverage.

*Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, No. 05 Civ. 5106 (DRH) (ETB) 2009 WL 936602, at *4 (E.D.N.Y. Mar. 31, 2009) (citing 29 U.S.C. § 1166). "A plan administrator's failure to comply with COBRA's notice requirements may entitle a beneficiary to statutory damages of up to $100 per day, attorney's fees and costs, and medical damages." *Messer v. Bd. of Educ. of City of New York*, No. 1 Civ. 6129 (JFB) (CLP) 2007 WL 136027, at *20 (E.D.N.Y. Jan. 16, 2007).

Plaintiff alleges that Defendants failed to provide COBRA notifications. In response, Defendants argue that because Plaintiff was terminated for gross misconduct, he was not entitled to COBRA benefits.[8] Further, Defendants argue that because the District acted in good faith, the

---

[8] Defendants are correct that notice need not be provided to an individual who is terminated for "gross misconduct." 29 U.S.C. § 1163(2). It is not clear, however, that Plaintiff's conduct arose to the level of gross misconduct. *C.f.*

COBRA notification was only delayed for one month, and Plaintiff was not prejudiced, Plaintiff's claim fails.

Defendants did not comply with the COBRA notice requirements. (*See* Defs.' 56.1 ¶¶ 33, 34.) Statutory damages for a violation of COBRA's notice provisions, however, are not automatic. "Under ERISA, of which COBRA is a part, a plan administrator who fails to meet the COBRA notice requirements 'may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day from the date of such failure or refusal." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 848 (2d Cir. 2013) (quoting 29 U.S.C. § 1166(a)(2) (alterations in original)). In assessing whether statutory penalties apply, "a district court should consider various factors, including 'bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and[, of particular significance here,] the existence of any prejudice to the participant or beneficiary.'" *Id.* (quoting *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 90 (2d Cir. 2001)). Courts in this Circuit routinely dismiss claims for statutory penalties where plaintiffs fail to demonstrate that they suffered any harm. *See, e.g.*, *Plotkin v. Bearings Ltd.*, 777 F. Supp. 1105, 1108 (E.D.N.Y. 1991) (dismissing claims where plaintiff failed to allege that he was harmed or prejudiced by delayed notice); *Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 233 (S.D.N.Y. 1989) (same); *Chambers v. European Am. Bank*, 601 F. Supp. 630, 638-39 (E.D.N.Y. 1985) (same). The same outcome is warranted here.

---

*Deutsch v. Kroll Assocs., Inc.*, No. 02-CIV-2892(JSR), 2003 WL 22203740, at *6 (S.D.N.Y. Sept. 23, 2003) (finding genuine issue of material fact with respect to whether a plaintiff was terminated for gross misconduct under COBRA where the plaintiff assaulted a co-worker and sent and received pornographic materials from his office computer). Further, the fact that Defendants belatedly provided Plaintiff with notice of his rights under COBRA, indicates that Defendants may not have believed that Plaintiff's conduct exempted him from COBRA notice. The Court need not resolve this issue, however, because based on the undisputed facts, Plaintiff is not entitled to statutory damages under COBRA.

The record indicates that Plaintiff was neither harmed nor prejudiced by Defendants' failure to provide a timely COBRA notice. For example, Plaintiff has provided no evidence that he was ever uninsured, accumulated expensive medical bills, or was unable to seek necessary medical attention. To the contrary, Plaintiff conceded during his deposition that, upon his termination, he "switched to [his] wife's insurance." (Defs.' Mem., Ex. D at 76:4-23, ECF No. 116-4.) Notably, when Plaintiff ultimately received the belated COBRA notice, he still chose not to opt-into COBRA coverage, instead remaining on his wife's insurance. (*See id.*) Because Plaintiff has failed to demonstrate a triable issue of fact with respect to his entitlement to damages, summary judgment is appropriate. *See Zann Kwan*, 737 F.3d at 848-49 (2d Cir. 2013) (affirming dismissal of COBRA claim on summary judgment where Plaintiff "incurred medical bills of only a few hundred dollars").

## V. Plaintiff's State Law Claims

Plaintiff also alleges claims arising under New York Law including negligence, defamation, and fraudulent misrepresentation. For the reasons set forth below, Defendants are also entitled to summary judgment with regard to these claims.

### A. Negligence

Plaintiff alleges that Defendants were negligent in a variety of ways arising from Defendants' investigation and subsequent termination of Plaintiff. (Compl. ¶¶ 179-88.) Defendants argue, in response, that Plaintiff failed to file a notice of claim with respect to his negligence claims and that Plaintiff cannot establish that Defendants owed a duty to Plaintiff or breached that duty. "In order to prove negligence under New York law, a plaintiff must demonstrate: (1) the existence of a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) injury; and (4) a reasonably close causal connection between the breach and the

resulting harm." *Flanagan v. New York City Dep't of Educ.*, No. 13 Civ. 8456 (LAK) (JCF), 2015 WL 11142630, at *15 (S.D.N.Y. Aug. 21, 2015).

With respect to Plaintiff's negligence claims arising from the investigation of his § 3020-a charges, "New York does not recognize a cause of action for negligent investigation." *Grennan*, 2007 WL 952067 at *22; *see also Coleman v. Corp. Loss Prevention Assocs., Inc.*, 282 A.D.2d 703, 703 (2d Dep't 2001) ("There is no cause of action in the State of New York sounding in negligent prosecution or investigation."). Therefore, these claims are dismissed.

Plaintiff also alleges that Defendant Wicks was negligent in failing to respond to Plaintiff's complaints arising from Plaintiff's assignment to Portable 11. Specifically, Plaintiff claims that Defendant Wicks negligently failed to respond to Plaintiff's complaints about working conditions, safety issues, and lack of bathroom facilities. (Compl. ¶ 184.) Defendant Wicks does not dispute that he owed Plaintiff a duty with respect to Plaintiff's working conditions, but contends that Plaintiff has failed to provide any evidence that he was harmed by his temporary assignment to Portable 11. (Defs.' Mem. at 21.) Plaintiff failed to address this deficiency in their papers and for this reason alone the Court could dismiss this claim. *See Maher v. All. Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (quoting *Taylor v. City of New York*, 269 F. Supp.2d 68, 75 (E.D.N.Y. 2003)). Moreover, although Plaintiff's complaint alleges that he suffered from stomach aches and fear due to anxiety associated with working in Portable 11, he failed to produce any evidence to support this claim. In the absence of any evidence of harm, Plaintiff has failed to demonstrate a triable issue of fact and this claim must be dismissed. *See Colorado Capital Invs., Inc. v. Owens*, 304 F. App'x 906, 908 (2d Cir.

2008) (affirming dismissal of negligence claim on summary judgment because plaintiff failed to demonstrate the defendant "either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety").

Plaintiff also alleges that Defendants were negligent in failing to implement the Hearing Officer's Decision. (Compl. ¶¶ 181, 186.) The Board, however, implemented the Hearing Officer's Decision on August 26, 2014—less than two weeks after the Decision was issued. (Defs.' Ltr. Mot. for Pre-Mot., Ex. Q, ECF No. 105-18.) Even if the Court were to consider this two-week delay a breach of any duty owed to Plaintiff, Plaintiff has not alleged any harm whatsoever arising from this delay. Therefore, this claim must also be dismissed.

Plaintiff further alleges that Defendants' failure to notify him of his COBRA benefits was also negligent. (Compl. ¶ 187.) For the reasons outlined above, however, Plaintiff has failed to provide any evidence that he was harmed by any delay. To the contrary, based on the record, Plaintiff was not harmed at all.

B. <u>Defamation</u>

Plaintiff alleges that certain of the individual Defendants made defamatory statements during the course of the § 3020-a proceedings. Specifically, Plaintiff claims that Defendant Carney stated that Plaintiff presented a threat to the Philips Avenue School and that Defendant Rogers compared Plaintiff to the Columbine and Newtown school shooters. (Pl.'s Opp. Mem. at 25.) Plaintiff also claims that Defendant Carney falsely informed the Board that Plaintiff admitted that the weapon found in his vehicle was his and that he needed it for his protection.

(Compl. ¶ 190.)  Defendants argue that any statements made during the course of the § 3020-a proceedings are protected by privilege.[9]  (Defs.' Mem. at 22-23.)  Defendants are correct.[10]

Under New York law, public officials have a qualified privileged to "make[ ] a bona fide communication upon a subject in which he [had] an interest, or a legal, moral, or social duty to speak, [where] the communication [was] made to a person having a corresponding interest or duty."  *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (finding principal's statements to guidance counselors and superintendent about an employee's ability to perform her duties "were clearly within the scope of the qualified privilege").  To overcome this privilege, Plaintiff must show that Defendants made the statements with "spite or ill will" or "with a high degree of awareness of their probable falsity."  *Id.* at 170 (quoting *Liberman v. Gelstein*, 605 N.E.2d 344, 349 (N.Y. 1992)).

Defendants Carney and Rogers made all of these statements within the scope of their duties as superintendent and principal and during the course of, or leading up to, the § 3020-a proceedings.  (*See* Compl. ¶¶ 193-94.)  Carney, as school superintendent, and Rogers, as school principal, had a qualified privilege to make statements about Plaintiff, his ability to perform his job, and the school's safety.  *See Peters*, 320 F.3d at 169 (finding principal who made statements

[9] Plaintiff failed to respond to this argument in their papers opposing summary judgment.  Once again, for this reason alone, the Court could grant summary judgment in favor of Defendants.  *See Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n. 11 (S.D.N.Y.), *aff'd,* 130 F.3d 1101 (2d Cir. 1997) (noting that the failure to provide argument on a point at issue on summary judgment constitutes abandonment of the issue).

[10] Defendants also argue that Plaintiff's defamation claims must be dismissed because Plaintiff's Notice of Claim failed to specifically identify the allegedly defamatory statements, the identity of the speakers, and the circumstances in which the statements were made.  (Defs.' Mem. at 22.)  The New York Court of Appeals has cautioned that the Notice of Claim test for sufficiency is limited to "whether it includes information sufficient to enable the city to investigate."  *Brown v. City of New York*, 740 N.E.2d 1078, 1080 (2000) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358 (1986).  "Nothing more may be required."  *Id.* (quoting *Schwartz v. City of New York*, 250 N.Y. 332, 335 (1929)).  While Plaintiff's Notice of Claim alleges "false and injurious statements regarding [Plaintiff's] background, criminal history[,] and his fitness for duty," (Defs.' Ltr. Mot. for Pre-Mot. Conf., Ex. P at 1,) the Court need not reach this issue because the statements are privileged and do not amount to defamation.

to guidance counselors and superintendent about an employee's ability to perform her duties "were clearly within the scope of the qualified privilege").  Plaintiff has not put forth any evidence of "spite or ill will" or that Defendants knew the statements were false.  For these reasons, Defendants are entitled to summary judgment on these claims.

Even if Plaintiff could overcome the privilege—which he cannot—he fails to point to a genuine issue of material fact as to whether Defendants defamed him.  Under New York law, "to establish a defamation claim, a plaintiff must prove 1) a defamatory statement of fact, 2) regarding the plaintiff, 3) published to a third party, 4) by the defendant, [5)] with injury to the plaintiff."  *Grennan*, 2007 WL 952067, at *16 (citing *Boyd v. Nationwide Mutual Ins. Co.*, 208 F.3d 406, 409 (2d Cir. 2000)).  With regard to the first element, a court must determine whether the statements are non-actionable pure opinion, or assertions of fact.  *See Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 158 (S.D.N.Y. 2016).  "A statement of 'pure opinion' is one which is either 'accompanied by a recitation of the facts upon which it is based' or 'does not imply that it is based upon undisclosed facts.'"  *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 461 (S.D.N.Y. 2012) (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986)).  This analysis is a question of law for the court and "[t]he dispositive inquiry is whether a reasonable reader could have concluded that the statements were conveying facts about the plaintiff."  *Ratajack*, 178 F. Supp 3d at 159.

The first two statements that Plaintiff challenges as defamatory are non-actionable opinion statements.  *See e.g.*, *Ratajack*, 178 F. Supp. 3d at 165 (finding statements in which the defendant "articulated concerns that Plaintiff was a racist or a future threat to others" was "nonactionable opinion").  Plaintiff alleges that Defendant Carney stated during Plaintiff's § 3020-a proceeding that "Plaintiff presented a threat to the safety and security of the Phillips

Avenue School population because of [his] weapon charge and that [Plaintiff] could not be returned to work under any circumstances." (Compl. ¶ 193.) This statement is "pure opinion" because it constitutes a conclusion (Plaintiff presented a threat to school safety) accompanied by the publicly disclosed facts upon which that conclusion was based (Plaintiff had been found in possession of a firearm without a license). *See Kamalian v. Reader's Digest Ass'n, Inc.*, 814 N.Y.S.2d 261, 263 (2d Dep't 2006) (dismissing defamation claims because the statements at issue were "expressions of opinion" because they "were adequately supported by a recitation of the facts upon which they were based, and did not imply that they were based on undisclosed facts"). Further, Plaintiff alleges that Defendant Rogers compared Plaintiff to the Columbine and Newtown school shooters and stated that she would "have to do a pat down every time Plaintiff came into the school building." (Compl. ¶ 194.) This statement is clear hyperbole and cannot have been intended as a statement of fact because Plaintiff indisputably was not actually the Columbine and Newtown school shooters. *See, e.g.*, *LeBlanc v. Skinner*, 955 N.Y.S.2d 391, 400 (2d Dep't 2012) (affirming decision finding that labeling of plaintiff as a "terrorist" was not actionable because "[s]uch a statement was likely to be perceived as 'rhetorical hyperbole, a vigorous epithet'") (quoting *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970)).

C. <u>Fraudulent Misrepresentation</u>

Plaintiff alleges that Defendants Carney and Okega made fraudulent representations during the course of Plaintiff's first § 3020-a proceeding. Defendants argue that these claims are time-barred, that Plaintiff failed to file a notice of claim with respect to these claims, that any representation was not fraudulent, and that these claims were released by Plaintiff's settlement with the District. "To state a claim for fraudulent misrepresentation under New York law, a plaintiff must show: '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiffs thereby, (3) the plaintiffs reasonably relied upon the

representation, and (4) the plaintiffs suffered damage as a result of their reliance.'" *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008) (quoting *Swersky v. Dreyer & Traub*, 643 N.Y.S.2d 33, 36 (1st Dep't 1996)).

Plaintiff's sole support for this claim is Defendant Carney's deposition testimony, in which Carney stated that Defendant Okega had told Carney that Plaintiff knowingly presented an affidavit containing false information when he signed his employment application. (Defs.' Reply 56.1 ¶ 50.) Plaintiff does not allege that he relied on these statements in entering into the 2012 settlement with the District. Indeed, based on Plaintiff's allegations, he could not have relied on these statements in entering into the 2012 settlement because he was purportedly unaware of these statements until 2014. (Compl. ¶ 201.) Therefore, Plaintiff has at most identified facts demonstrating that Defendant Carney relied on Defendant Ogeka's statement. Third-party reliance, however, is insufficient to establish a fraud claim. *See Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 829, *reargument denied*, 28 N.Y.3d 956, 60 N.E.3d 421 (2016) (stating that "a fraud claim requires the plaintiff to have relied upon a misrepresentation by a defendant to his or her detriment" and "declin[ing] to extend the reliance element of fraud to include a claim based on the reliance of a third party, rather than the plaintiff"). Therefore, Defendants are entitled to summary judgment as to this claim.

## VI. Declaratory Relief

Plaintiff also seeks to have the Court find that his termination is a nullity because the Board allegedly failed to take any administrative action (*i.e.*, adopt a resolution voted on by the majority of the Board) to implement his termination. (Compl. ¶¶ 207-10.) Defendants point out that the Board has since implemented Plaintiff's termination, rendering this claim moot. (Def.'s Mem. at 24.) Defendants are correct.

On August 26, 2014, the Board voted to implement the Hearing Officer's Decision. (Defs.' Ltr. Mot. for Pre-Mot., Ex. Q, at 16.)  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C.A. § 2201.  Because the Declaratory Judgment Act only permits the Court to act when confronted with an *actual controversy*, and no such *actual controversy* exists here, this claim must be dismissed.  *See Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) ("[E]ven when parties 'continue to dispute the lawfulness' of the conduct that gave rise to the action, the matter is no longer justiciable if 'that dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'") (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)).

## CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment is granted in its entirety and Plaintiff's complaint is dismissed.  The Clerk of the Court is respectfully directed to enter judgment and close this case accordingly.

<div style="margin-left: 50%;">

SO ORDERED:

      /s/LDH
_____
LaSHANN DeARCY HALL
United States District Judge

</div>

Dated: Brooklyn, New York
      September 11, 2018